IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| SABREANA JOHNSON | § | |
| --- | --- | --- |
|  | § | |
| V. | § | A-13-CA-1079-LY |
|  | § | |
| J. C. PENNEY CORPORATION, INC. | § | |
| AND J. C. PENNEY COMPANY, INC. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants' Motion to Dismiss and Compel Arbitration, filed on February 11, 2014 (Dkt. # 7); Plaintiff's Response, filed on February 25, 2014 (Dkt. # 9); and Defendants' Reply, filed on March 4, 2014 (Dkt. # 10). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.   GENERAL BACKGROUND

On March 29, 2011, Plaintiff Sabreana Johnson ("Johnson"), who is African-American, was hired by J. C. Penney as a hairstylist in a J. C. Penney store in Temple, Texas. On September 7, 2012, Johnson was terminated from her employment. On December 20, 2013, Johnson filed this suit against J. C. Penney Corporation, Inc. and J. C. Penney Company, Inc. (collectively "JCPenney") alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Texas Commission on Human Rights Act. JCPenney moves to dismiss the case, arguing that the Court should compel Johnson to submit her claims to arbitration pursuant to

the Parties' arbitration agreement. Plaintiff argues that the case should not be compelled to arbitration because the arbitration agreement is "illusory."

## II. ANALYSIS

A.  **Applicable Law**

The Federal Arbitration Act ("FAA") requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute that is the subject of the litigation. 9 U.S.C. § 3. As the Supreme Court has observed, "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625-26(1985) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221(1985)) (internal citations omitted). Thus, under the FAA arbitration agreements are considered "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, in the employment context arbitration agreements are generally enforceable. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001).

In deciding a motion to compel arbitration under the FAA, courts generally conduct a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). First, the court determines "whether the parties agreed to arbitrate the dispute in question." *Id.* at 258 (citations omitted). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* If the court finds at step one there is an agreement to arbitrate, then at step two the court considers "whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims." *Id.* (internal quotation marks and citations omitted). Finally, in this analysis, the party seeking to invalidate an arbitration agreement bears the burden of establishing its

invalidity, and the court should resolve all doubts concerning the arbitrability of claims in favor of arbitration. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).; *Mitsubishi Motors*, 105 S.Ct. at 3353–54.

**B.     Is the Arbitration Agreement Enforceable?**

At the commencement of her employment with JCPenney, Johnson signed a document entitled "Arbitration Agreement" that states, in pertinent part, the following:

> My employer and I voluntarily agree to resolve disputes arising from, related to, or asserted after the termination of my employment with JCPenney through mandatory binding arbitration under the JCPenney Rules of Employment Arbitration. My employer and I voluntarily waive the right to resolve these disputes in courts.
>
> I acknowledge that I was given the opportunity to review the Rules and consult with an attorney prior to signing this Agreement. I understand that I will, however, be bound by this Agreement and the Rules once I sign electronically, regardless of whether I have reviewed the Rules, or consulted with an attorney, prior to signing. I hereby agree to arbitrate disputes covered by and pursuant to the JCPenney Rules of Employment Arbitration.
>
> Check the box below and click on the Accept button below to electronically sign this form. By signing this form, you agree....

Arbitration Agreement, Exh. A to Defendants' Motion to Dismiss. Johnson acknowledges that she signed the Arbitration Agreement electronically on March 29, 2011, and that the Agreement covers the claims asserted in this case. However, Johnson argues that the Arbitration Agreement is not enforceable because it gives JCPenney a unilateral right to amend the Agreement and thus is illusory.

Here, the issue of whether an arbitration clause is illusory and thus unenforceable is governed by Texas law. *See Carter*, 362 F.3d at 301 ("In determining the contractual validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts"). Under Texas law, "[a]n agreement to arbitrate, like other contracts, must also be supported by consideration." *Mendivil v. Zanios Foods, Inc.,* 357 S.W.3d 827, 831 (Tex. App.-El Paso 2012). Thus, "when a purported bilateral contract is supported only by illusory promises, there is no

contract." *Id.* at 832.  As it relates specifically to arbitration agreements, the "[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement." *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010).  Where one party has the unrestrained unilateral authority to terminate its obligation to arbitrate, however, the agreement understandably is illusory. *See id.* at 567 ("An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether.").

> This is not to say that if a party retains any ability to terminate the agreement, the agreement is illusory.  Instead, retaining termination power does not make an agreement illusory so long as that power 1) extends only to prospective claims, 2) applies equally to both the employer's and employee's claims, and 3) so long as advance notice to the employee is required before termination is effective.

*Lizalde v. Vista Quality Markets,* 746 F.3d 222, 225 (5th Cir. 2014) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002)).

Johnson argues that Rule 21 of the JCPenney Rules of Employment Arbitration—a separate document from the Arbitration Agreement—grants JCPenney an "unfettered right" to amend the Arbitration Agreement.  Rule 21 states:

> A.  JCPenney may amend any Rule *to clarify it or correct typographical errors*.
>
> B.  If, in the course of a Case, if a Rule or subpart thereof is deemed unenforceable by a court or arbitrator, it will be considered stricken from these Rules insofar as that particular Case is concerned. JCPenney may thereafter amend these Rules to delete any such Rule or subpart, thus preventing its application to future Cases.
>
> C.  Amendments only apply to Cases commenced 90 days after publication of the amendment.

Exh. C to Defendants' Motion to Dismiss (emphasis added).  In support of her argument that the Agreement is illusory, Johnson relies on *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002).  In that case, the Tenth Circuit held that "an arbitration agreement allowing one party the

unfettered right to alter the arbitration agreement's existence or its scope is illusory." The arbitration agreement in that case permitted the employer to "at any time change, delete, modify, or add to any of the provisions contained in this handbook at its sole discretion," with the exceptions of employee's employment-at-will status and the arbitration provision. *Id.* at 1217.

The plain language of the Agreement here does not grant JCPenney a unilateral right to amend the Agreement. Rather, it allows JCPenney to clarify or correct typographical errors in the rules, strike rules that are found to be unenforceable by a court or arbitrator, and apply any such modifications only to cases begun 90 days after such change is published. This is far from granting JCPenney an "unfettered unilateral right" to amend the Agreement, as Johnson argues, and the Agreement is therefore not an illusory promise to arbitrate. *See In re 24R, Inc.*, 324 S.W.3d at 566 ("An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether.").

This is not the first time this very issue has been decided by a court. In *Gonzales v. J.C. Penney Corp., Inc.*, 2013 WL 1798684 (N.D. Okla. April 29, 2013), the plaintiff raised the exact same argument raised here, contending that JCPenney's arbitration agreement was unenforceable because Rule 21 gave it an unfettered right to amend the agreement. The district court rejected the argument, stating:

> The court concludes that Rule 21 contains reasonable restrictions upon JCP's right to amend the Arbitration Agreement. Therefore, the agreement is not illusory. Additionally, since both JCP and Gonzales agreed to submit any employment-related claims to binding arbitration, as provided by the Rules of Arbitration, their mutual promises to arbitrate claims constitute adequate consideration to support the arbitration agreement.

unfettered right to alter the arbitration agreement's existence or its scope is illusory." The arbitration agreement in that case permitted the employer to "at any time change, delete, modify, or add to any of the provisions contained in this handbook at its sole discretion," with the exceptions of employee's employment-at-will status and the arbitration provision. *Id.* at 1217.

The plain language of the Agreement here does not grant JCPenney a unilateral right to amend the Agreement. Rather, it allows JCPenney to clarify or correct typographical errors in the rules, strike rules that are found to be unenforceable by a court or arbitrator, and apply any such modifications only to cases begun 90 days after such change is published. This is far from granting JCPenney an "unfettered unilateral right" to amend the Agreement, as Johnson argues, and the Agreement is therefore not an illusory promise to arbitrate. *See In re 24R, Inc.*, 324 S.W.3d at 566 ("An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether.").

This is not the first time this very issue has been decided by a court. In *Gonzales v. J.C. Penney Corp., Inc.*, 2013 WL 1798684 (N.D. Okla. April 29, 2013), the plaintiff raised the exact same argument raised here, contending that JCPenney's arbitration agreement was unenforceable because Rule 21 gave it an unfettered right to amend the agreement. The district court rejected the argument, stating:

> The court concludes that Rule 21 contains reasonable restrictions upon JCP's right to amend the Arbitration Agreement. Therefore, the agreement is not illusory. Additionally, since both JCP and Gonzales agreed to submit any employment-related claims to binding arbitration, as provided by the Rules of Arbitration, their mutual promises to arbitrate claims constitute adequate consideration to support the arbitration agreement.

*Id.* at 5. *See also, Rembert v. J.C. Penney Corp., Inc.*, 2014 WL 790785 (S.D. Ohio Feb. 26, 2014) (rejecting plaintiff's arguments that the agreement was unenforceable and unconscionable).

The Court agrees with the district court's analysis in *Gonzales*, and finds that Rule 21 is a reasonable modification provision which does not render the Arbitration Agreement in this case illusory. Accordingly, the parties in this case entered into a binding agreement to arbitrate this case. The Court further finds that no federal statute or policy renders the claims at issue in this dispute nonarbitrable. Based upon the foregoing, the Court recommends that the District Court grant the Motion to Dismiss and compel this case to arbitration.

### III. RECOMMENDATION

Based upon the foregoing, the Magistrate Court **RECOMMENDS** that District Court **GRANT** Defendants' Motion to Dismiss and Compel Arbitration (Dkt. # 7) and **ORDER** the Parties to proceed to arbitration.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466,

472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 18th day of June, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE